**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSANNA LEE BIONDOLILLO,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Rosanna Lee Biondolillo ("Plaintiff") brings this Complaint against Defendant Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") and alleges as follows:

## INTRODUCTION

1. This is an individual action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et. seq.* (the "FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this District under 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff resides in Middletown, Delaware, and qualifies as a "consumer" as defined and protected by the FCRA.

5. Experian is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent, C T Corporation System, located at 330 North Brand Boulevard, Glendale, CA 91203.

6. Trans Union is a consumer reporting agency that maintains its principal place of business at 555 W. Adams Street, Chicago, IL 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

## FACTUAL ALLEGATIONS

### Identity Theft Incident

7. On or about November 30, 2012, Plaintiff's then-husband, Michael Biondolillo ("Mr. Biondolillo"), opened a joint M&T Bank credit card account ending in 0567 in the names of Plaintiff and Mr. Biondolillo (the "Fraudulent M&T Account").

8. Plaintiff did not apply for the M&T Bank credit card account.

9. Plaintiff did not authorize Biondolillo to open the M&T Bank credit card account in her name.

10. Plaintiff did not knowingly use or benefit from the M&T Bank credit card account.

11. Plaintiff and Mr. Biondolillo separated on January 14, 2022.

12. During the parties' divorce proceedings, Plaintiff and Mr. Biondolillo admitted to opening the joint account without Plaintiff's knowledge and incurring the debt himself.

13. On or about February 10, 2022, Plaintiff and Mr. Biondolillo executed a Memorandum of Understanding that provided for the payment of the M&T Account from the proceeds of the sale of the parties' marital residence.

14. The Court ordered that the credit card be closed.

15. However, in or around December 2025, Plaintiff learned that the M&T Account had remained open after the parties' divorce and that her ex-husband had continued using the M&T Account after the divorce and had incurred additional charges on the account without Plaintiff's knowledge.

16. By that time, the M&T Account had become delinquent and reflected a substantial outstanding balance.

**Plaintiff's Directly Contacted M&T Bank**

17. After learning that the M&T Account had remained open and that additional debt had been incurred on the account, Plaintiff promptly contacted M&T Bank in an effort to resolve the matter.

18. During that communication, Plaintiff explained that she had not authorized the opening of the account, use of the account, or the post-divorce use of the M&T Account and requested documentation relating to the opening of the account, including the original credit card application.

19. M&T Bank informed Plaintiff that it no longer possessed the original credit card application because of the age of the account.

20. M&T Bank further informed Plaintiff that credit cards had been issued in both Plaintiff's and Mr. Biondolillo's names, but that there were no transactions associated with the credit card issued in Plaintiff's name.

21. On or about December 4, 2025, Plaintiff submitted a written dispute to M&T Bank explaining that the balance being reported resulted from Biondolillo's continued use of the M&T Account after the divorce.

22. Plaintiff enclosed documentation from the parties' divorce proceedings in support of her dispute.

23. Despite the information and documentation provided by Plaintiff, she received no response to her December 4, 2025, written dispute.

**Plaintiff's December 2025 Disputes with Experian and Equifax**

24. On or about December 24, 2025, Plaintiff disputed the M&T Account with Experian and non-party Equifax Information Services, LLC ("Equifax").

25. In her dispute, Plaintiff explained that the account and balance being reported on the M&T Account resulted from charges incurred by Biondolillo after the parties' divorce without Plaintiff's knowledge or authorization.

26. Plaintiff requested that the identity theft information be blocked from her credit file.

27. Non-party Equifax verified the M&T Account and continued reporting it on Plaintiff's consumer file.

28. Experian stated that it would not remove the identity theft information from Plaintiff's credit file. Experian failed to adequately review all of the information provided to it by Plaintiff.

29. Experian failed to reinvestigate Plaintiff's December 2025 dispute and failed to block the identity theft information.

30. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

31. Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Plaintiff Applies for financing through Apple Financing by Goldman Sachs**

32. On or about January 30, 2026, Plaintiff applied for financing through Apple Financing by Goldman Sachs to purchase a replacement laptop but was denied because of the inaccurate identity theft reported by Trans Union.

33. The denial heightened Plaintiff's concern regarding the continuing consequences of the Fraudulent M&T Account.

34. Plaintiff thereafter continued pursuing relief in the Delaware Family Court concerning Mr. Biondolillo's failure to close the Fraudulent M&T Account and pay off the debt he had incurred on the account after the parties' divorce.

35. On May 21, 2026, following an evidentiary hearing, the Delaware Family Court found Mr. Biondolillo in contempt of the ancillary order.

36. The Delaware Family Court ordered Mr. Biondolillo to continue paying the outstanding balance on the Fraudulent M&T Account, including monthly payments of at least $500.

**The CRAs Continue Reporting the Fraudulent Account**

37. In or around June 2026, Plaintiff obtained copies of her consumer files from the three national CRAs saw that they were each reporting the Fraudulent Account.

38. Despite Plaintiff's prior disputes and the Delaware Family Court's May 21, 2026, findings and order concerning Mr. Biondolillo's unilateral opening of the account and his unauthorized post-separation use of the account, the M&T Account continued to be reported on Plaintiff's consumer files as a joint account with a substantial delinquent balance.

39. Specifically, the CRAs reported the Fraudulent M&T Account as a joint credit card account with Mr. Biondolillo, with a balance of $13,065, a charge-off status, $12,172 written off, and $13,065 past due as of April 2026.

40. The continued reporting caused Plaintiff to appear responsible for a charged-off and delinquent debt arising from charges that she had not incurred or authorized.

41. On or about June 10, 2026, Plaintiff submitted an Identity Theft Report to the

Federal Trade Commission ("FTC Report").

**Plaintiff's June 2026 Disputes**

42. On or about June 12, 2026, Plaintiff mailed dispute letters to Experian, Trans Union, and non-party Equifax concerning the Fraudulent M&T Account.

43. Plaintiff specifically disputed that the account and resulting debt were not legally attributable to her and explained that the account had been opened and later used by Mr. Biondolillo without her knowledge or authorization.

44. Plaintiff provided sufficient information to identify the Fraudulent M&T Account, identify her consumer file, and substantiate that the disputed information resulted from identity theft.

45. Plaintiff requested that the identity theft information be blocked from her credit file.

46. After initially requesting additional identity-verification documentation, Equifax ultimately removed the Fraudulent M&T Account from Plaintiff's Equifax credit file following Plaintiff's repeated disputes.

**Experian's Unreasonable Dispute Reinvestigation**

47. On June 24, 2026, Experian issued dispute results representing that the Fraudulent M&T Account had been deleted from Plaintiff's credit report and that Plaintiff's spouse information had likewise been removed.

48. Experian further represented that the items Plaintiff requested to be blocked as a result of identity theft had been blocked from her personal credit report.

49. On or about July 15, 2026, Plaintiff obtained an updated Experian credit report and discovered that the Fraudulent M&T Account continued to appear on her consumer file.

50. On or about July 20, 2026, Experian issued additional dispute results stating that

the M&T Account had been "updated."

51. Experian failed to adequately review all of the information provided to it by Plaintiff.

52. Experian failed to reinvestigate Plaintiff's June 2026 dispute and failed to block the identity theft information.

53. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

54. Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Trans Union's Unreasonable Dispute Reinvestigation**

55. On or about June 16, 2026, Trans Union responded that Plaintiff's dispute did not appear to have been submitted by Plaintiff or by an authorized representative.

56. Trans Union reached that conclusion despite Plaintiff having provided sufficient identifying information and documentary support to establish her identity and the basis of her dispute.

57. Trans Union failed to adequately review all of the information provided to it by Plaintiff.

58. Trans Union failed to reinvestigate Plaintiff's June 2026 dispute and failed to block both of the disputed Fraudulent Accounts.

59. On or about July 2, 2026, Plaintiff mailed a second dispute letter, dated June 29, 2026, to Trans Union concerning the Fraudulent M&T Account.

60. On or about July 8, 2026, Trans Union again informed Plaintiff that it would not

process her dispute because it concluded that the request did not appear to have been submitted by Plaintiff or by someone she had authorized.

61. On or about July 12, 2026, Trans Union issued investigation results to Plaintiff stating that the previously deleted M&T Bank account had been verified and added back to Plaintiff's credit report.

62. Specifically, Trans Union represented that the M&T Bank account had been "previously deleted," but that, following its investigation, the account had been verified and reinserted into Plaintiff's credit file as a joint revolving credit account.

63. In its July 12, 2026 investigation results, Trans Union continued to report the M&T Bank account as a joint account with an outstanding balance of $12,065, an original charge-off amount of $12,172, an amount past due exceeding $12,065, and a charge-off status.

64. Trans Union failed to adequately review all of the information provided to it by Plaintiff.

65. Trans Union failed to reinvestigate Plaintiff's July 2026 dispute and failed to block the identity theft information.

66. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

67. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**PLAINTIFF'S DAMAGES**

68. Plaintiff did exactly what she should have done upon realizing she was the victim

of identity theft.

69. Plaintiff contacted M&T Bank and disputed the Fraudulent Account as the product of fraud and identity theft.

70. Plaintiff filed an FTC Identity Theft Report.

71. Plaintiff disputed with CRAs and provided them with the Court Order.

72. Plaintiff identified herself as an identity theft victim and specifically identified her ex-husband, Mr. Biondolillo, as the individual responsible for the unauthorized opening and subsequent use of the Fraudulent M&T Account.

73. Equifax blocked the disputed Fraudulent M&T Account that was the product of identity theft upon Plaintiff's repeated requests. Defendants did not.

74. Instead, Defendants repeatedly disregarded Plaintiff's credible disputes. Often responding to a victim of identity theft with form letters questioning whether Plaintiff authorized the disputes.

75. After several months from Plaintiff's initial dispute, and well after non-party Equifax blocked both of the Fraudulent Account, neither Experian nor Trans Union have done so.

76. Plaintiff reasonably believes that the Defendants continue to inaccurately publish the Fraudulent M&T Account in Plaintiff's consumer reports.

77. As a direct result of the Credit Bureau Defendants' ardent refusal to remove the disputed Fraudulent Account which was a product of identity theft, the Defendants have continued to saddle Plaintiff with the Fraudulent M&T Account which was the product of identity theft.

78. Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

79. Further, and due to Defendants' inexplicable refusal to remove the Fraudulent Account from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same, to no avail.

80. Defendants' conduct disrupted Plaintiff's life.

81. In addition to impacting her work productivity and income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time she would otherwise have spent with her friends and family. It has taken a toll on Plaintiff.

82. Plaintiff has reasonably lost countless hours suffering and worrying over whether someone would seek to collect the outstanding balance on the Fraudulent Account from her.

83. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes. Further, Plaintiff reasonably believes that the Fraudulent Account had negatively impacted and depressed her credit score.

84. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under Defendants' direct supervision and control.

85. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and Plaintiff's rights.

86. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. Her ongoing stress and anxiety regarding the situation have affected her and her relationships negatively.

87. The Credit Bureau Defendants have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of *April Hendrix vs. Equifax, et. al.*, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including Defendants Experian and Trans Union, over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

88. The *Hendrix* suit put Defendants Experian and Trans Union on notice several years ago that its policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

89. Defendants have had years of notice in the form of federal lawsuits, despite it all, Defendants did not take any better steps to protect the Plaintiff here.

90. The internal policies and procedures of Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately or to reinvestigate carefully when notified of consumer disputes.

91. As a standard practice, Defendants do not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the data furnishers, like Defendants BANA here, despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once

the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

92. Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

93. Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

94. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Accounts which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Accounts which were the product of identity theft.

95. In September 2025, Plaintiff was denied a preapproval for a mortgage to purchase her post-separation home. Plaintiff desperately wants to purchase the home, but Defendants' refusal to correct the report is preventing her from doing so.

96. Plaintiff's inability to attain credit, because of Defendants' FCRA violations, has been especially hard because Plaintiff has custody of her three children and her husband has not been paying child support.

97. Plaintiff has been under severe stress because of Defendants' FCRA violations which has worsened her symptoms of ulcerative colitis. Plaintiff has had to seek treatment for the stress exacerbating her condition.

98. As a further result of Defendants continued reporting of the Fraudulent M&T Account, Plaintiff suffered actual harm to her ability to obtain credit. On June 25, 2026, Plaintiff was denied a Direct PLUS Loan that she sought to help finance her son's college education because of adverse credit information appearing in her credit history. Plaintiff was later denied an American Express pre-approval on or about July 28, 2026. Plaintiff reasonably believes that the continued reporting of the Fraudulent M&T Account materially impaired her creditworthiness and contributed to these denials.

99. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Defendants.

## COUNT I
**Violations of 15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

100. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

101. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

102. On numerous occasions, Defendants prepared patently false consumer reports concerning Plaintiff.

103. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Defendants readily and repeatedly sold such false reports to one or more third parties, thereby

misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff was responsible for the Fraudulent M&T Account.

104. Further, due to the Fraudulent Account, Plaintiff suffered adverse action from her creditors.

105. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

106. As a result of the Defendants conduct, action, and inaction, Plaintiff suffered damages as described herein.

107. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

108. The Defendants conduct, actions, and inactions were willful, re, or at least negligent, rendering it liable for actual damages, statutory damages, punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**<u>COUNT II</u>**
**Violations of 15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

109. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

110. The FCRA mandates that a CRA conduct an investigation of the accuracy of

information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

111. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

112. On numerous occasions during 2025 and 2026, Plaintiff disputed the inaccurate information with the Defendants and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent M&T Account that was the product of identity theft.

113. Plaintiff disputed the identity theft information with the Defendants to no avail.

114. Plaintiff supported her disputes with a copy of the FTC Identity Theft Report.

115. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, the Defendants conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

116. The Defendants' refusal to delete the identity theft information provided credibility to the Fraudulent Accounts and forced an identity theft victim to be repeatedly confronted with the evidence of identity theft.

117. Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day

period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

118. As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damages as described herein.

119. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

120. The Defendants' conduct, actions, and inactions were willful, , or at least negligent, rendering them liable for actual damages, statutory damages, punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Violations of 15 U.S.C. § 1681c-2**
**Failure to Block Information Resulting from Identity Theft**

121. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

122. Defendants violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

123. Plaintiff repeatedly submitted ample evidence of the fact that she was an identity theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing the Defendants with a copy of the Court Order finding such and the FTC Identity Theft Report.

124. The Defendants should have blocked the Fraudulent M&T Account but failed to do

so at every turn.

125. As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damages as alleged herein.

126. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

127. The Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering it liable for actual damages, statutory damages, punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this September 3, 2026

**Garibian Law Offices, P.C.**

By: /s/ Antranig Garibian
Antranig N. Garibian, Esq. Bar No. 4962
1523 Concord Pike, Suite 400
Wilmington, DE 19803
T: (302) 722-6885
E: ag@garibianlaw.com
*Attorneys for Plaintiff*